Filed 1/22/26  P. v. Ruiz CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CESAR STEVEN RUIZ,<br><br>    Defendant and Appellant. | B341200<br><br>(Los Angeles County<br> Super. Ct. No. BA492757) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry Paul Fidler, Judge.  Affirmed as modified, sentence vacated and remanded with directions.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan, Supervising Deputy Attorney General, and Nancy Lii Ladner, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Cesar Steven Ruiz went into a house and shot his friend. Defendant was convicted of first degree murder, first degree residential burglary, and possession of a firearm by a felon. The trial court imposed consecutive sentences for each conviction. On appeal, the Attorney General concedes that the trial court erred in imposing consecutive sentences for the murder and burglary convictions under Penal Code section 654.[1] In addition, both parties agree that defendant was entitled to an additional day of presentence custody credits. We also agree on these points and remand for resentencing.

## FACTUAL BACKGROUND

In December 2020, four individuals (Fernando Tafolla, Eduardo Mendoza, Gilbert Moreno, and Jose)[2] were living together in a home and trafficking narcotics. Defendant's role in the narcotics operation was as a backup, "some kind of security," and to make sure the drugs arrived at their destination. Defendant wanted to move into an empty bedroom in the house.

On December 13, 2020, defendant and Mendoza argued about missing money from a methamphetamine transaction. However, on December 24, 2020, the men apologized and tried to resolve their differences.

Around 12:30 a.m. on December 25, 2020, defendant drove his car to the back of the house. Defendant held a gun behind his back as he approached the house. When he entered the house, defendant had the gun by his side. The gun was a nine-millimeter Taurus. It was a gun that

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Jose's last name is unknown.

2

previously belonged to Mendoza, but was later acquired by defendant. Five seconds after defendant went into the house, Moreno heard between five and ten rapid gunshots. The shots sounded like they were from the Taurus. When defendant ran out of the house, he said in Spanish to Moreno, "esto es pa mi jefito," which means "it's for my boss."

After the shooting, Mendoza was sitting on his bed, bleeding and asking for help. He later died from eight gunshot wounds. There were nine-millimeter spent casings in his bedroom. Defendant's phone records showed that he was in the area at the time of the murder and that he sent threatening messages soon after.

## PROCEDURAL HISTORY

On December 12, 2023, a jury convicted defendant of first degree murder (§ 187, subd. (a); count 1) and first degree residential burglary (§ 459; count 2). As to counts 1 and 2, the jury also found true defendant personally used a handgun (§ 12022.5, subd. (a)). In a bifurcated proceeding, the trial court found defendant guilty of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3).

The trial court sentenced defendant to 25 years to life plus 12 years in state prison, consisting of: 25 years to life for count 1, plus 10 years for the personal use enhancement; a consecutive term of 16 months for count 2; and a consecutive term of 8 months for count 3. Defendant was given 1,324 days of presentence custody credit.

Defendant timely appealed.

3

# DISCUSSION

## I.  *Section 654*

Defendant contends, and the Attorney General agrees, consecutive sentences on both the murder and burglary counts violates section 654's prohibition against multiple punishments for a single act.  We too agree.

### A. *Relevant Background*

At trial, the jury was instructed that, to prove defendant was guilty of burglary as charged in count 2, the People were required to prove defendant entered a building and "[w]hen he entered a building, he intended to commit murder."  And, during closing argument, the prosecutor argued that the burglary was predicated on the murder.  He contended that the burglary "refers to entering a building with the intent to commit a crime inside, a felony inside, the felony here being the murder of [Mendoza]."  The prosecutor then stated that "the question here is when [defendant] entered [the house] right before killing [Mendoza], did he go in with the intent to [kill].  If you find that he did, [defendant is] guilty on the burglary."  The prosecutor concluded, "[I]f you believe [defendant is] guilty of the murder, then almost by definition he's guilty of the burglary as well."

At the sentencing hearing, the prosecutor stated that the facts underlying the burglary demonstrated that  defendant went into the house with the intent to commit murder.  However, the prosecutor then argued defendant should be punished separately because it was "an utter violation of the sanctity of one's residence," and that Mendoza was not in a position to defend himself.  The court noted that the crime was "extremely violent" and it deserved the "absolute maximum sentence."  The court then imposed consecutive terms for each crime.

4

B. *Analysis*

Section 654, subdivision (a) provides in relevant part that: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." This statute "bars the imposition of multiple sentences for a single act or omission, even though the act or omission may violate more than one provision of the Penal Code." (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1413.) "Section 654 has long been interpreted to preclude multiple punishments not only for a single act that violates more than one statute, but for an indivisible course of conduct. [Citation.] . . . [Citation.] '[I]f all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.'" (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1042–1043.) "On appeal, we review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People. [Citation.] We review de novo the legal question of whether section 654 applies." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)

"Burglary consists of entry into a house . . . with the intent to commit a felony. [Citation.] Thus, ordinarily, if the defendant commits both burglary and the underlying intended felony, Penal Code section 654 will permit punishment for one or the other but not for both." (*People v. Centers* (1999) 73 Cal.App.4th 84, 98; see also *People v. Islas* (2012) 210 Cal.App.4th 116, 130 ["When a defendant is convicted of burglary and the intended felony underlying the burglary, section 654 prohibits punishment for both crimes"].)

5

Here, the record reflects that the intent and objective of both the burglary and the murder were the same, and this was the prosecution's theory of the case at trial. Accordingly, in light of the evidence introduced at trial, the jury instruction on burglary, and the prosecutor's argument, substantial evidence does not support the trial court's order to sentence defendant consecutively on these counts. Rather, one of the sentences on counts 1 or 2 should be stayed pursuant to section 654. And, because section 654 provides the court with discretion with regard to which sentence will be stayed, remand is necessary for the court to exercise its discretion in modifying defendant's sentence. In doing so, we express no opinion about how the trial court should exercise its discretion.

II.    *Custody Credits*

We agree with the parties that defendant is entitled to presentence custody credits for 1,325 days he spent in custody between his arrest and sentencing.

Section 2900.5 provides that a defendant is entitled to have the time he spends in custody before he is sentenced credited toward his term of imprisonment. Such credit is distinct from credits an inmate may receive for good conduct or participation in certain rehabilitation or work programs while in custody. (See §§ 2933.05, 4019.) Section 2933.2, subdivision (a) precludes a person convicted of murder from accruing worktime and conduct credit between arrest and conviction but does not preclude such a person from receiving custody credits accrued during this time. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

The trial court awarded defendant 1,324 custody credits. Defendant was entitled to one additional day of presentence custody credit because the

6

court failed to include the day of his arrest. (*People v. Valdes* (2020) 53 Cal.App.5th 953, 955 [the day of arrest "counts as a custody credit day"].) On February 18, 2021, defendant was arrested. On October 4, 2024, he was sentenced to state prison. There are 1,325 days between the two dates, including the first and last date. Therefore, on remand, the trial court is directed to modify the judgment to reflect an award of 1,325 days of presentence custody credit.

## DISPOSITION

The sentence is vacated, and the case is remanded with directions for the trial court to resentence defendant applying section 654 and to further exercise its sentencing discretion under current law. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.) The trial court is also directed to modify the judgment to reflect an award of 1,325 days of presentence custody credit. As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


MORI, J.

7